### E. NORTHCRAFT ET AL. V. Z. S. OLIVER ET AL.

#### No. 6154.

1.   **Equity—Purchaser.**—If both the execution and the judgment under which a sale is made are void, or if the judgment alone is void, the purchaser does not by the mere fact of his being a purchaser in good faith at the execution sale acquire the right to hold the property purchased until the purchase money paid by him, and which went to discharge a debt of the owner of the property, is repaid to him.

2.   **Same.**—But if the property so purchased was at the time of the purchase charged or encumbered with the debt for which it was sold, then independent of the legal proceedings under which it was sold the rule that the purchase money must be restored before the property can be recovered back by its owner or his heirs applies.

3.   **Heirs—Right of Action.**—The heirs of an estate can not maintain an action to

recover property belonging to the estate while administration is pending unless there are no debts unpaid against the estate and no necessity for administration.

4.   **Heirs—Creditors—Equity.**—A creditor of an estate against whom suit is brought to recover its property can not protect himself by compelling payment of his debt as the condition of its surrender, as he could if the suit were brought by the decedent.   A different rule might violate the statute by securing to him priority of right over other debts of equal dignity.

5.   **Execution Sale.**—An execution issued after the death of the judgment creditor is void.

6.   **Service by Publication.**—The rule that service by publication does not confer jurisdiction will not be extended beyond the doctrine announced in Pennoyer v. Neff, 95 U. S., 714.   Such service upon citizens of Texas made in pursuance of the statute of Texas is binding.

7.   **Right of Action by Heirs—Administration.**—After the lapse of a long interval since any action had been taken in an administration which was never formally closed, though unpaid claims existed against the estate, suit was brought by the heirs to recover the property of the estate.   *Held,* that they could not maintain the action.

APPEAL from Hays.   Tried below before Hon. H. Teichmueller.
The opinion states the case.

*Cocke, Denman & Franklin,* for appellants. — 1.   Where there is an administration being had upon the estate of a deceased person, the administrator and not the heirs is the proper party to bring a suit for the recovery of land belonging to the estate of such decedent.   Whenever the heirs sue and it appears at any stage of the trial that the estate of the ancestor under whom they claim title is being administered upon, the suit must abate, for the reason that the heirs are not entitled to the land until the administration on their ancestor's estate is closed.   This being true, it does not matter at what stage of the trial a plea in abatement setting up the fact of such administration is filed.   It strikes at the very foundation of plaintiff's right to recover, and it is error to strike it out because not filed "in due order of pleading."   Like a motion to adjourn in a parliamentary body, it is always "in order."   Willis & Bro. v. Smith, 65 Texas, 658; Heath v. Layne, 62 Texas, 693; Giddings v. Steele, 28 Texas, 732, and cases cited in the opinion; Webster v. Willis, 56 Texas, 473; Walker v. Abercrombie, 61 Texas, 71.

2.   Where a judgment is attacked collaterally and sought to be avoided on the ground that it is nullity because the court rendering it had never obtained jurisdiction over the person of the defendant therein, the person attacking same must show clearly by his averments the existence of every fact necessary to make such judgment a nullity.   All intendments and presumptions will be indulged in by the courts to support the judgment thus collaterally attacked.   Assuming that this court will follow the ruling in Pennoyer v. Neff as to the nullity of a personal judgment against a non-resident upon substituted service, yet where such nullity is alleged the party alleging it must show affirmatively that the defendant

in such judgment was a non-resident at the time of the institution of the suit and at the time of the citation by publication, had never entered an appearance in the cause, and never been personally cited to appear and answer. Thouvenin v. Rodrigues, 24 Texas, 468; Long v. Brenneman, 59 Texas, 212, and cases cited in the opinion; Bradley v. Love, 60 Texas, 475; Edwards v. Halbert, 64 Texas, 670; Mills v. Herndon, 60 Texas, 360; Bowers v. Chancy, 21 Texas, 363; Sutherland v. De Leon, 1 Texas, 250.

3. A State has a right to declare what character of service shall be sufficient in any case in which judgment is sought against one of its citizens, and when the courts hold that a judgment rendered upon substituted service against a non-resident is void, the word "non-resident" is used in the sense of a "resident citizen of a sovereignty other than that in which the judgment is rendered." It does not appear from said supplement that said Oliver was not a citizen of Texas when he was cited to answer in the cause in which said judgment was rendered, nor that he was then a citizen of the sovereignty in which he was alleged to have resided at his death, and therefore it does not appear affirmatively by the allegations in said supplement that said judgment was void. Pennoyer v. Neff, 95 U. S., 714; 98 U. S., 478; 99 U. S., 370; 101 U. S., 413–422; 103 U. S., 198; 106 U. S., 353; 107 U. S., 545; 110 U. S., 156.

4. At the time of the rendition of said judgment valid service by publication could be had on other than non-resident defendants, and the judgment having recited that the defendant was "duly cited by publication," the courts will presume when the same is collaterally attacked that the defendant was a resident citizen of Texas when cited by publication, that such citation was valid and such judgment not void. Act March 16, 1848, vol. 11, p. 109; Thouvenin v. Rodrigues, 24 Texas, 468; Long v. Brenneman, 59 Texas, 212, and cases cited in the opinion.

*O. T. Brown* and *Donald & Cobb*, for appellees.— 1. A personal judgment by default rendered on service by publication against a non-resident is a nullity, and if it appears by recitals in the judgment that it was rendered upon such service the court can not presume another service which would give the trial court jurisdiction, and such judgment can be attacked in any court in which it is attempted to be set up. W. & W. Con. Cases, sec. 129; Cool. on Const. Lim., pp. 462, *et seq.*, 499, 500; Freem. on Judg., sec. 561; Pennoyer v. Neff, 95 U. S., 714; Freeman v. Alderson, 119 U. S., 190; Hart v. Sansom, 110 U. S., 157; Gulpin v. Paige, 18 Wall., 357; Parrott v. Ala. L. Ins. Co., 4 Wood's Rep.; Belcher v. Chambers, 53 Cal., 635; McKinney v. Collins, 88 N. Y., 217; Bank v. Peabody, 45 Am. Rep., 632.

2. The judgment being a nullity on its face, it was not evidence of any indebtedness against A. T. Oliver or his estate, and money paid at an

execution sale under said judgment was not paid in satisfaction of any valid claim against Oliver or his estate, and could not be said to be paid for his benefit or the benefit of his estate; and a person purchasing at such sale is a trespasser, and he or those claiming under him are not entitled to retain the property till reimbursed the amount of money paid therefor. Freem. on Judg., sec. 117.

3. Where a great length of time has elapsed since any action or control over the estate has been taken by the administrator, and where there are no debts owing by the estate, the administration will be presumed to have been closed and the heir may sue for property of the estate. Patton v. Gregory, 21 Texas, 513; Giddings v. Steele, 28 Texas, 748; Bufford v. Holliman, 10 Texas, 571; Rogers v. Kenard, 54 Texas, 36; Walker v. Abercrombie, 61 Texas, 72; Cochran v. Thompson, 18 Texas, 652; McIntyre v. Chappell, 4 Texas, 187; Clay v. Clay, 13 Texas, 200; Lacey v. Heirs of Williams, 8 Texas, 182; Easterling v. Blythe, 7 Texas, 211; Word's Heirs v. Word, Posey's U. C., 125.

HENRY, ASSOCIATE JUSTICE.—This is an action of trespass to try title brought by appellees.

Plaintiffs in their original petition alleged title in themselves generally.

Defendants pleaded "not guilty," also a purchase of the land in controversy at an execution sale made under a judgment of the District Court of Austin County, Texas, rendered against the father of plaintiffs; that the purchaser at said sale in good faith paid two thousand five hundred and twenty-four dollars, the purchase money at said sale, and received a deed from the sheriff for said land.

Defendants allege that said money went to partly discharge a debt against A. T. Oliver, the father of plaintiffs, leaving a balance of said debt unpaid, and that said A. T. Oliver subsequently died insolvent. They further allege that administration was opened and was still pending in Texas upon the estate of A. T. Oliver, and that plaintiffs claim title to said land as heirs of said A. T. Oliver.

They pray that if plaintiffs recover, a writ of possession shall not be awarded them, except upon condition of their refunding the money paid for the land at the execution sale.

Plaintiffs replied that A. T. Oliver died on the 27th July, 1873, and that he was at the time of his death and had been long before a non-resident of the State of Texas and a resident of the Empire of Brazil; that said judgment was rendered without jurisdiction over the person of the defendant, and was void, it being a personal judgment by default upon service by publication.

The cause was tried without a jury and judgment rendered for plaintiffs for the recovery of the land.

The court filed conclusions of fact to the effect that A. T. Oliver was

common source of title. In 1871 suit was brought against him by one Bennett in the District Court of Austin County on a note, in which a personal judgment by default was rendered against him on service by publication, under which the land in controversy was sold.

A. T. Oliver was a resident of Brazil when the judgment against him was rendered, and died there July 27, 1873, leaving surviving him a widow (not a party to this suit) and plaintiffs, who are his children.

An administration was opened on the estate of said A. T. Oliver in Waller County, Texas, in October, 1874, and was never closed, but the last order made in it was in December, 1877. Except a small balance the costs of administration were paid, and the administrator died on the 19th day of January, 1886.

The original petition in this case was filed on the 18th day of June, 1885.

Among other claims the unpaid balance of the Bennett judgment was presented, allowed, and approved as a just claim against said estate.

The purchase money at the sheriff's sale was paid and duly credited on the judgment against Oliver.

After plaintiffs filed their supplemental petition defendants filed a plea in abatement, setting up the pendency of administration upon the estate of A. T. Oliver, and also demurred on the ground that plaintiffs, while suing as the heirs of A. T. Oliver, do not allege that no administration upon his estate had been opened, nor that there existed no necessity for such an administration.

Defendants also alleged in their answer to the merits the pendency of an administration upon the estate of A. T. Oliver, and the existence of debts against the same.

The court on motion of plaintiffs struck out the plea in abatement and overruled defendants' exceptions.

It is objected that the court erred in striking out the plea in abatement, in overruling the exceptions, and in rendering judgment for plaintiffs in disregard of the evidence that an administration was pending on the estate of A. T. Oliver.

In the case of Patton v. Gregory, 21 Texas, 517, it is said that "the general rule is that heirs, devisees, etc., should not be allowed to sue for the recovery of the debts or property of an estate pending an administration."

In the case of Giddings v. Steele, 28 Texas, 748, the same doctrine is announced.

In this case it is said that "when there are creditors or an administrator of the estate the heirs should not be permitted to sue for and recover property of the estate in their own right and hold it against the administrator and creditors, and thus effect a partition of the estate, in whole or in part, without satisfying the debts against the estate. It would seem

to be a safe rule not to permit the heirs to recover property by suit in their own right unless they make it appear that the administration has been closed, or that the condition of the estate is equivalent to that by showing that there is no administrator appointed or acting, and that there are no debts against the estate."

All of the objections against the maintenance of a suit by heirs to recover personal property belonging to an estate may not apply with equal force when their suit is for the recovery of land.

When real estate is so recovered we see no reason why it may not still be subjected to administration, unaffected by the fact that it was not recovered in the name of the administrator. The same may be said with regard to the right to administer personal property so long as it continues in kind and can be found.

The decisions of this court have not recognized any distinction in this respect between the two descriptions of property. In the case of Giddings v. Steele real estate was the subject matter in controversy.

Another issue raised in this case illustrates the propriety, if not the necessity, of applying the rule to real as well as personal property.

It is insisted that defendants and those under whom they hold by warranty deeds from the purchaser at the execution sale should either have the purchase money refunded that went to satisfy in part a debt due by plaintiff's ancestor or should be subrogated to the rights of the creditor against the land, notwithstanding both the judgment and the execution under which the sale was made were void.

In the case of Morton v. Welborn, 21 Texas, 772, the heirs sued for the land of their ancestor, which defendants claimed through an execution sale made after the ancestor's death on a judgment rendered against him in his lifetime. Referring to this sale Justice Wheeler says: "But whether valid or not, it was averred in the answer and appears in proof that the ancestor of the plaintiffs received the benefit of the proceeds of the sale applied to the satisfaction of the execution against him, and under the decision of this court in the case of Howard v. North the plaintiffs can not recover the property without reimbursing the purchase money paid, which went to the satisfaction of the judgment against their ancestor. This is according to the plainest dictates of reason and natural justice, and this they have not done or offered to do."

In the case of French v. Grenet, 57 Texas, 273, land had been sold in a proceeding under the United States bankrupt law after the death of the person to whose estate it belonged. In a suit by heirs to recover it from the purchaser holding it under the bankrupt sale Justice Bonner said: "The land in controversy descended to plaintiffs charged in equity and by the express terms of our statutes with the payment of the debts for which it was sold. These debts had been merged into valid and subsisting legal judgments in a court of competent jurisdiction,

which were a lien on the property at the time of sale, to the extinguishment of which the proceeds were applied. The defect in the proceedings did not arise from want of validity in the debts themselves or want of jurisdiction in the court which established them, but in the means or instrumentality by which the judgment of the same was enforced."

On the other hand, in the case of Stegall v. Huff, 54 Texas, 193, a judgment had been rendered against Huff on service by publication unauthorized by our statutes. Huff's land had been sold under an execution issued on the judgment and the suit was being prosecuted by Huff to recover the land from the purchasers. This court held the judgment void, and say that "the judgment being void the sheriff's sale under it did not of itself divest Huff of his title to the land, and he was not bound to refund the purchase money paid the sheriff."

This doctrine was cited with approval in the case of French v. Grenet, referred to above.

If both the execution and the judgment under which a sale is made are void, or if the judgment alone is void, we think it may be recognized as established law in this State that the purchaser does not by the mere fact of his being in good faith a purchaser at a judicial sale acquire the right to hold the property purchased until the purchase money paid by him, and which went to discharge a debt of the owner of the property, is repaid to him.

But if the property so purchased was at the time of the purchase charged or encumbered with the debt for which it was sold, then, independently of the legal proceedings under which it was sold, we think the rule that the purchase money must be restored before the property can be recovered back by its owner or his heirs does apply.

The property of the deceased was in this case charged with the payment of his debts. This charge was superior to the claims of his heirs. The facts show that he had abandoned his residence in this State and was permanently domiciled elsewhere when he died. That removes from this case all questions of homestead and allowances which usually will arise in such cases and makes the claims of creditors upon the property superior to all others.

The general rule being firmly established that the heirs can not sue for and recover the property belonging to the estate of a deceased ancestor while an administration is pending, nor when there is no administration without alleging and proving if resisted that there exists no necessity for administration because there are no debts, necessarily precludes such a recovery by the heirs as such from a creditor himself. Such a creditor ought not to be allowed when his debt is against a decedent's estate to protect himself by compelling the payment of his debt as the condition of his surrendering the property, as he could do if the suit was by the ancestor himself, because that would have the effect of giving him prior-

ity over other creditors of the same estate, if they existed, whose claims might be of equal dignity with his own or even greater. The right of the creditor of the estate is good to defend against the heirs taking and appropriating the property, but his right is no better to appropriate it exclusively to his own use than is that of the heirs to do the same thing.

The creditor protects himself, and at the same time all other creditors and claimants of the estate, by surrendering the estate's property only to an administrator of the estate in whose hands our laws are so framed as to provide for its proper distribution.

The evidence in this case shows that the execution under which defendants hold was issued after A. T. Oliver's death, and for that reason it was void.

The evidence is, we think, sufficient to support the court's finding that A. T. Oliver was, at the date of the rendition of the judgment against him, a non-resident of the State of Texas. Appellants claim that the rule that jurisdiction over the person can not be acquired merely by service by publication does not apply to citizens of Texas, but is limited to non-residents.

The rule that service by publication only does not confer jurisdiction in our courts is adopted by us in deference to the authority of the case of Pennoyer v. Neff, 95 United States Reports, and we are not disposed to extend it beyond the doctrine announced in that case.

We understand that authority holding that such service does not confer jurisdiction over a non-resident of the State does not extend any further, and we hold as heretofore that such service upon our own resident citizens made in pursuance of our statutes is binding.

It is, however, a question of residence abroad and not of the acquisition of citizenship in the new domicile.

In this case appellants complain that plaintiffs did not sufficiently allege the non-residence of A. T. Oliver and that their demurrer on that ground ought to have been sustained. The demurrer to the point was general, and we think was properly overruled.

We are not advised on what ground the plea in abatement was stricken out, but we think the ruling was proper if placed on the ground that it was not filed in due order of pleading.

In a proper case it is no doubt within the discretion of the court to permit all pleadings to be withdrawn for the purpose of filing a plea in abatement.

The same question was sufficiently and properly raised both by demurrer and by answer to the merits.

In the case of Peveler v. Peveler, 54 Texas, 58, Justice Gould says: "To show their right to sue the plaintiffs alleged that there was 'no administration on said estate, the administration of the defendant L. J. Peveler having been closed by his removal.' If, however, the evidence

showed a pending administration and unsettled claims, then prima facie at least it showed that the heirs had no right to sue. The defendants were not driven to plead the nonjoinder of the administrator in abatement. The case was not one of defect of parties who ought to have been coplaintiffs, but it was one in which the evidence negatived the right of action claimed by plaintiffs."

The evidence shows that there had been an administration opened in Texas upon the estate of A. T. Oliver, and that it had never been formally closed, though a very long interval had elapsed since any action had been taken in it. The administrator was living when this suit was begun, but died before judgment was rendered.

What is of more importance, however, the record shows the existence of a large indebtedness against said estate, and a necessity for its continued administration, including the disposition of the property in controversy if the title to it is in said estate. Under these conditions plaintiffs can not recover the property in controversy. The judgment is reversed and cause remanded.

*Reversed and remanded.*

Delivered May 28, 1889.