## GIBSON et al. v. OPPENHEIMER et al.

(Court of Civil Appeals of Texas. San Antonio. Feb. 12, 1913. Rehearing Denied March 5, 1913.)

1. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—REQUISITES.

Assignments of error to the admission of evidence are not properly reviewable, if no statement setting forth the parts of the record involved are subjoined, as required by Court of Civil Appeals rule 31 (142 S. W. xiii); mere reference to bills of exception or the statement of facts being insufficient.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

2. JUDGMENT (§ 17*)—CITATION—UNKNOWN HEIRS.

Under Rev. Civ. St. 1911, art. 1875, providing that any one having a claim against unknown heirs relative to property inherited by them may describe them as the unknown heirs of their ancestor, naming him, etc., sale of land under judgment enforcing a vendor's lien in a suit against unknown heirs divests all their right, title, and interest as fully as though they had personally appeared; they being inhabitants of the state and having been duly cited by publication.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 25–33; Dec. Dig. § 17.*]

3. JUDGMENT (§ 671*) — CITATION OF UNKNOWN HEIRS.

In an action to enforce a vendor's lien founded on citation to unknown heirs of decedent, judgment did not affect the interest of his widow; she not being made a party.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 671.*]

4. PROCESS (§ 85*)—CITATION BY PUBLICATION—CONSTRUCTION OF STATUTES.

Laws authorizing service of process by publication must be strictly construed.

[Ed. Note.—For other cases, see Process, Cent. Dig. § 99; Dec. Dig. § 85.*]

5. APPEAL AND ERROR (§ 216*) — RESERVATION OF ERROR — SUBMISSION OF ISSUES — REQUEST—NECESSITY.

Plaintiffs, in trespass to try title, cannot complain of the trial court's failure to submit an issue whether defendants, who pleaded ten years' limitations, cultivated, used, and enjoyed the land during that time, unless such submission was requested.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216;* Trial, Cent. Dig. §§ 627–629, 630–641, 660, 662–676.]

6. ADVERSE POSSESSION (§ 114*)—EVIDENCE—SUFFICIENCY.

In trespass to try title, evidence *held* to sustain pleas of five and ten years' limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682, 683, 685, 686; Dec. Dig. § 114.*]

7. LIMITATION OF ACTIONS (§ 73*)—DISABILITY OF MINORITY—REMOVAL BY MARRIAGE.

An act of 1895 (Acts 24th Leg. c. 30), which provides that in a suit to recover land limitations shall not begin to run against married women until they become 21 years old, applies to trespass to try title, wherein defend-

---

ants rely on a judgment foreclosing a vendor's lien.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 399–412; Dec. Dig. § 73.*]

8. DESCENT AND DISTRIBUTION (§ 125*)—PROPERTY SUBJECT TO—SUITS AGAINST UNKNOWN HEIRS.

Under Rev. Civ. St. 1911, art. 1875, providing that, where property has accrued to heirs, a party having a claim against them relative to such property may sue them as the unknown heirs of their ancestor, naming him, where such property does not satisfy a claim sued on, other property which came to the heirs from the same decedent can be levied upon to satisfy the deficiency.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 457–477; Dec. Dig. § 125.*]

9. EXECUTORS AND ADMINISTRATORS (§ 202*)—DEBTS AS LIEN.

The debts against a decedent constitute a lien upon all the property of his estate, subject to the payment of debts.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 730, 738–745, 748, 754, 763; Dec. Dig. § 202.*]

10. DESCENT AND DISTRIBUTION (§ 138*) — DEBTS AS LIEN—ENFORCEMENT.

The lien against a decedent's property, created by his debts, should be enforced by administration when it can be done; but, if it cannot be done, resort can be had to a suit.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. § 495; Dec. Dig. § 138.*]

11. JUDGMENT (§ 495*).— COLLATERAL ATTACK.

On collateral attack in trespass to try title on a judgment relied on by defendants, it will be presumed that matters necessary to sustain the judgment were alleged and proved.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 549½, 933, 934; Dec. Dig. § 495.*]

12. VENDOR AND PURCHASER (§ 288*)—TENDER—NECESSITY.

If the proceedings in a suit to enforce a vendor's lien were void, those claiming under the purchaser could not recover the land, in trespass to try title, without paying, or offering to pay, the purchase money secured by the lien.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 815–819; Dec. Dig. § 288.*]

13. ELECTION OF REMEDIES (§ 1*)—APPLICATION OF DOCTRINE.

The doctrine of election of remedies applies only when there are two or more methods of enforcing a claim.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. § 1; Dec. Dig. § 1.*]

Appeal from District Court, La Salle County; J. F. Mullally, Judge.

Trespass to try title by Rowena Gibson and others against Daniel Oppenheimer and others. From the judgment, plaintiffs Gibson and others appeal. Partly affirmed, and partly reversed and remanded.

Love & Rouse, of Carrizo Springs, for appellants. Covey C. Thomas, of Cotulla, and E. Pendleton Lipscomb and Shook & Vander-Hoeven, both of San Antonio, for appellees.

FLY, C. J. This is an action of trespass to try title, instituted by appellants, Mrs. Rowena Gibson and husband, Thomas Gibson, and Mrs. Belle Eardley, joined by her husband, W. N. Eardley, against appellees, Daniel Oppenheimer, Adelaide Oppenheimer, Hattie O. Lassner and her husband, Sigmund Lassner, Lilly Oppenheimer, Irwin Oppenheimer, Lottie O. Rouff and her husband, Seymour Rouff, to recover two tracts or parcels of land, one containing 10, and the other 15, acres. It was alleged that the appellants reside in Dimmit county, Tex.; that Mrs. Gibson was the wife of Thomas Coble, deceased, after whose death she married Thomas Gibson; that Mrs. Eardley is the daughter and only child of Thomas Gibson; that Coble died in 1889, and at his death was the owner in fee-simple title of the land sued for; and that the appellants are his only heirs, and as such heirs are the owners of the land. Appellees pleaded not guilty and limitations of three, five, and ten years, and further alleged that on May 4, 1897, D. & A. Oppenheimer recovered a judgment against appellants in the district court of La Salle county for $310, with interest, and foreclosure of a vendor's lien on the land in controversy, and on July 6, 1897, bought, at sheriff's sale, the 15-acre tract for $110, and the 10-acre tract for $50, which amounts were credited on the judgment; that, at the time the judgment was rendered, appellants lived in Dimmit county, Tex.; that service was obtained by publication; and that more than 14 years had elapsed since the judgment was rendered, and they pleaded two and four years' limitation against the action.

The cause was tried by jury, being submitted on special issues as to limitation alone; and they answered in a way to justify a judgment for appellees, as against both appellants, on five and ten years' limitation, if the infancy of Mrs. Eardley did not protect her. The court found as facts that Mrs. Eardley was a minor at the time the judgment was rendered and when she married Eardley on February 22, 1906, and reached the age of 21 in July, 1910; that appellees had a vendor's lien on the 15-acre tract, which they foreclosed on May 4, 1897, against the unknown heirs of Thomas Coble in the district court of La Salle county, and that they bought the interest of Mrs. Eardley therein at a sale under the judgment, and thereby became the owners of that interest; that appellees, during their possession of the land, used it for stock-raising purposes. The court, upon the special verdict and his conclusions of fact, rendered judgment for appellees against all of the appellants for the 15-acre tract of land, and for an undivided one-half of the land of the 10-acre tract, as against all of the appellants and in favor

---

of Mrs. Eardley for the other one-half of the 10-acre tract.

[1, 2] The first and second assignments assail the action of the court in admitting in evidence the judgment in favor of D. & A. Oppenheimer v. Unknown Heirs of Thomas Coble, and sheriff's deed executed thereunder. There is no such statement under the assignments as is contemplated by rule 31 (142 S. W. xiii) for Courts of Civil Appeals. There is really no statement, but merely references to the bills of exception and the statement of facts. It has been often held that such statements are not sufficient, and that the assignments, with only such statements, should not be considered. Bayne v. Denny, 21 Tex. Civ. App. 435, 52 S. W. 985; Railway v. Olds, 112 S. W. 787; Vann v. Denson, 56 Tex. Civ. App. 220, 120 S. W. 1020; Griffin v. State, 147 S. W. 328. The facts are stated, however, in an argument which follows the propositions of law; and in view of that fact the assignments are considered, although the rules have been disregarded.

It is provided in article 1875, R. S. 1911, former number 1236, that "where any property of any kind in this state may have been granted, or may have accrued to the heirs, as such, of any deceased person, any party having a claim against them relative to such property, if their names be unknown to him, may bring his action against them, their heirs or legal representatives, describing them as the heirs of such ancestor, naming him; and if the plaintiff, his agent or attorney, shall at the time of instituting the suit, or any time during its progress, make oath that the names of such heirs are unknown to the affiant, the clerk shall issue a citation for such heirs, addressed to the sheriff or any constable of the county in which the suit is pending." It is clear that appellees had a claim against the unknown heirs of Thomas Coble, deceased, relative to the 15 acres of land upon which the former held notes given by Thomas Coble for the purchase money of the land, and to secure which a vendor's lien had been retained. It is agreed by the parties that the law was strictly complied with in obtaining the judgment against the unknown heirs of Thomas Coble, and that the 15 acres of land was duly sold by the sheriff under an order of sale, issued by virtue of the foreclosure of vendor's lien, and that the 15 acres of land was bought by appellees. Such being the state of the record, the sale made by virtue of the order of sale divested all of the right, title, and interest of the unknown heirs as fully as though they had been personally in court. They were inhabitants of Texas at the time they were cited by publication, and were bound by the laws of Texas in regard to citations by publication.

It was held in the case of Martin v. Burns, 80 Tex. 679, 16 S. W. 1073: "It follows that, as the records of the county court do not affirmatively show that S. P. Crockett was a nonresident of this state when the citation was made, the ruling of the court below in holding that the judgment of the county court of Mitchell county was valid and binding, in so far as the question of notice was concerned, was correct. * * * This conclusion is not in conflict with the doctrine of Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, but is based entirely upon the absolute presumptions which the law indulges in support of a judgment of a domestic court of general jurisdiction and the verity of its records. It must now be regarded as the settled rule of decision in this state that when applicable the chief principle announced in Pennoyer v. Neff will be observed, and that when it affirmatively appears from the record that a purely personal judgment has been rendered against a nonresident and citizen of another state, without appearance or waiver by him, upon citation by publication alone, or by process beyond the state, such judgment cannot be enforced and is subject to collateral attack. This is the extent to which the decisions in this state go." This quoted language was used in a case in which a personal judgment was rendered against parties cited by publication. In the case of Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325, the Martin-Burns Case is cited with approval. We know of no decision questioning the correctness of the decision in the Martin-Burns Case. The decisions cited by appellants are all in reference to parties· who were nonresidents, and of course have no applicability to this case, as will be readily seen by a perusal of the opinion in the main case cited (that of Stephens v. Stephens, 62 Tex. 340).

In the case of Iiams v. Root, 22 Tex. Civ. App. 413, 55 S. W. 411, in which a writ of error was refused, it was said: "There is no question as to the correctness of the proposition that, unless it appears from the record that the defendant was a nonresident of the state at the time this suit was brought and service was had by publication (the court in which it was tried being a domestic court of general jurisdiction and having jurisdiction of the subject-matter of litigation), it will be conclusively presumed, on collateral attack, that it had jurisdiction over the person of the defendant, and a personal judgment was properly rendered against him."

[3, 4] We think that the suit on the notes was conclusive as to Mrs. Eardley; but Mrs. Gibson, not being an heir, was not affected by a judgment against the unknown heirs of Thomas Coble. She was not in any way a party to the suit. Not being an heir, she could not be cited under the statute as to unknown heirs, because no property had been granted or had accrued to her as an heir of her husband. As said by the Supreme Court, "Notice by publication is, at best, but a mis-

erable substitute for personal service" (Edrington v. Allsbrooks, 21 Tex. 186); and service provided for a certain named class cannot be held to bind others of a different class. Laws as to publication are not liberally interpreted, but strictly construed. Dunn v. Taylor, 42 Tex. Civ. App. 241, 94 S. W. 347. If Mrs. Gibson had been named or cited so as to identify her, the judgment as to her would not have been void, for it has been held that, if it is recited in the judgment that a party was duly cited, it cannot be attacked in a collateral proceeding, although proof aliunde the record would show conclusively that there had been no service. Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325; Templeton v. Ferguson, 89 Tex. 47, 33 S. W. 329; Moore v. Hanscom, 101 Tex. 293, 106 S. W. 876, 108 S. W. 150. Not being a party to the suit, Mrs. Gibson was not bound by the judgment. It follows that she not only was not bound by the sale of the 15 acres of land, but also by the sale of the 10 acres of land; and any title obtained from her by appellees must come through limitations, as was held by the trial judge.

[5, 6] The jury found that appellees paid taxes on the land in controversy from 1897 to 1910, inclusive, with the exception of 1903, "of which there was no record shown," and also found that appellees held peaceable and adverse possession of the land from 1897 to 1910. The court found that, during the time appellees held possession of the land, they used it for stock-raising purposes. Through the fourth assignment of error, appellants assail the charge of the court because it did not require the jury to answer as to whether, during the ten years appellees held the land, they cultivated, used, and enjoyed the same. If appellants desired that issue to be submitted to the jury, they should have requested it; and they cannot now be heard to complain of the failure to submit it. Article 1985, R. S. 1911, old number 1331. And under authority of the cited article, if the court had not found, as he did, that appellees used and enjoyed the land, it would be deemed that he had so found in support of the judgment, if the facts justified such finding. The facts in this case do furnish a justification for such a finding. Daniel, a witness for appellees, testified that the land in controversy was fenced in 1897 in an inclosure containing 150 acres of land, and was used by J. S. Petty, a tenant of appellees, for pasturing his horses and cattle. Petty so used the land up to 1908 or 1909, when he left; then the land was rented to other parties by Daniel, who was the agent of appellees. As to Petty's use of the land, Daniel was corroborated by Wildenthall. Daniel Oppenheimer swore that he leased the land to Petty in 1897, and that he was the tenant of appellees for more than 10 years. Covey C. Thomas testified that the 25 acres was fenced in with a larger body of land, from 100 to 200 acres, and that it had been a pasture for many years, and that it was used by Petty for pasturing horses and cattle. He swore that he knew that Petty had the land leased. He testified "he held that land and used it and occupied it as a tenant of D. & A. Oppenheimer, and, after Anton Oppenheimer's death, as tenant for these defendants in this case, up to the time he left and was in possession of it therein—went in possession in 1897 as tenant of these parties." Appellants raised no question about all the taxes having been paid. The evidence was ample to show limitations by five and ten years, so far as Mrs. Gibson was concerned.

[7] Limitation did not begin to run against Mrs. Eardley until July 3, 1910, when she became 21 years of age. It is true that it is provided in article 4628, R. S. 1911, that every female under the age of 21 years who shall marry, in accordance with the laws of the state, shall, after such marriage, be deemed of full age, and shall have all the rights and privileges she would have, had she been 21 when she married, and that has been construed many times to mean that the statute of limitations begins to run against such minor from the moment of her marriage. Thompson v. Cragg, 24 Tex. 582; Parish v. Alston, 65 Tex. 194. But that rule has been changed by an act of 1895, wherein it is provided "that limitation shall not begin to run against married women until they arrive at the age of 21 years," in suits for the recovery of real property. By the amendment of 1895 (Laws 1895, c. 30), the disability of infancy of a woman as to claims for real estate is not removed by marriage, but remains until she becomes 21 years of age, at which time it begins to run; and their claims to land will be barred in the same time that those of others are barred. It is true that the amendment of 1895 has no reference to any suits except those for land; but as this is a suit for land, and not to set aside a judgment, it applies. If this were a proceeding to set aside the judgment, the statute of four years would apply, and Mrs. Eardley would be barred, because, as to a proceeding of that kind, the statute began to run when she married. She did not, however, seek to set aside the judgment, but objected to its use as evidence of title because it was void.

[8] While the judgment was not void and could not be attacked collaterally, a different and more difficult question is presented in the attack on the execution that was levied on the 10 acres to satisfy the balance of the judgment remaining after the sale of the 15 acres upon which the vendor's lien was foreclosed. The suit of D. & A. Oppenheimer to recover the purchase money and foreclose the vendor's lien was instituted under authority of the statute herein quoted as to unknown heirs, which gives authority to sue unknown heirs in cases when any property of any kind has been granted or accrued to

them as heirs of a deceased person, where the plaintiff has a claim against such heirs relative to such property, and the question arises as to whether, when such property does not satisfy the claim, any other property which came to the heirs from the deceased person can be levied upon to satisfy the balance of the judgment. Or in other words, is the proceeding one in rem—that is, as to the property alone—or is the judgment obtained, if the unknown heirs be residents of Texas, one in personam which can be satisfied out of any other property of the estate inherited by the unknown heirs? This question could have been decided long since by the Supreme Court of Texas; but a decision of it has been avoided in each instance which has been brought to our consideration.

In the case of Taliaferro v. Butler, 77 Tex. 578, 14 S. W. 191, unknown heirs were sued, and the question was fairly presented as to whether a personal judgment could be sustained against them; and, although there was nothing in the record to indicate that they were nonresidents, the Supreme Court held: "The personal judgment for costs rendered against defendants had no greater validity than any other merely personal judgment rendered against a nonresident on service by publication alone." It might be inferred from that decision that, if the unknown heirs were residents of Texas, a personal judgment could be rendered against them; but it was not held directly.

The misrecital of the facts in the opinion cited is adverted to in Kilmer v. Brown, 28 Tex. Civ. App. 420, 67 S. W. 1090, in which it was said: "The record in the case showed that the parties against whom the validity of the judgment was asserted were sued and cited as unknown heirs; and there was not even any evidence aliunde the record to show that they were nonresidents, for the trial court excluded the judgment, execution, and deed upon the fact appearing that the defendants had been cited by publication."

Again in the case of Foote v. Sewall, 81 Tex. 659, 17 S. W. 373, a judgment of partition against unknown heirs was held valid; but an execution for costs was held to be void because the unknown heirs were nonresidents, and a judgment in personam for costs was void, and consequently could not form a basis for an execution. The sole ground of the opinion was the nonresidence of the unknown heirs.

In Hardy v. Beaty, 84 Tex. 562, 19 S. W. 778, 31 Am. St. Rep. 80, it was held that an execution for costs in a suit, wherein nonresident unknown heirs were parties, was invalid; but the decision was on the ground that they were nonresidents alone. In that case the status of a judgment of a domestic court of general jurisdiction is fixed and its immunity from collateral attack is clearly stated.

While the Supreme Court has not decided the question at issue, except by necessary implication, the Courts of Civil Appeals in several instances have not hesitated to declare that, if the unknown heirs are residents of Texas, personal judgments may be rendered against them. In the cited case of Kilmer v. Brown, it was held: "A personal judgment against a nonresident cited by publication rendered on such constructive notice is void and will not support a sale of property thereunder. * * * But the judgment of a domestic court of general jurisdiction, having jurisdiction of the subject-matter rendered against a defendant cited by publication, it not appearing from the record of the cause that the defendant was a nonresident, imports absolute verity and is not subject to collateral attack." A writ of error was refused by the Supreme Court.

In the case of Watson v. McClane, 18 Tex. Civ. App. 212, 45 S. W. 176, it was held that a personal judgment was valid against resident unknown heirs who were cited by publication, and in support of the decision Northcraft v. Oliver, 74 Tex. 167, 11 S. W. 1121, was cited. In that case the Supreme Court held, in regard to service by publication: "We understand that authority holding that such service does not confer jurisdiction over a nonresident of the state does not extend any further, and we hold, as heretofore, that such service upon our own resident citizens, made in pursuance of our statutes, is binding." The Court of Civil Appeals held, after making the foregoing quotation: "Hence the judgment in the partition would be void as to such unknown heirs only as may have been nonresidents of the state at the time, and to such of them as resided within the state it would be valid."

The conditions under which the citation of unknown heirs by publication is authorized by the statute—that is, when the heirs have obtained any property from a deceased person, against which any party may have a claim—does not limit the extent to which the judgment may go, but is merely a condition precedent to issuing such process. The statute does not say that the claim must be a lien upon such property; and, when the service by publication is complete, the resident unknown heir is in court for all purposes in connection with the claim as much so as though there had been personal service. This is the effect of the decisions herein cited; and, while most of them are partition suits, the decisions do not justify personal judgments for costs on the ground of each parcel of land being responsible for its part of the costs, but on the ground that the parties are residents of Texas, have been duly cited as Texas laws provide, and are in court for all purposes connected with the subject-matter of the suit. This is indicated in Pool v. Lamon, 28 S. W. 363. The conditions in the statute are to protect unknown heirs from any claims except those connected with the

estate from which they have acquired property; and, when those conditions exist, the judgment that may be rendered against them is not necessarily confined to a specific parcel of property; and if there should be a lien on certain property, and the sale of that property is not of sufficient value to satisfy such lien, there can be no valid reason for holding that a levy cannot be had upon other property obtained by the heirs from the deceased person to satisfy the debt, if the parties were properly impleaded.

It must be kept in mind that there was no administration on the estate of Thomas Coble, nor any condition of affairs that demanded an administration; and we are of the opinion that all the estate of Thomas Coble inherited by Mrs. Eardley was incumbered with and was subject to the debt of D. & A. Oppenheimer, independent of the fact that he had a lien on certain of the property. When the suit of D. & A. Oppenheimer was filed, it was the only remedy they had, as Thomas Coble died in 1889, and the suit was not filed until 1897. State v. Lewellyn, 25 Tex. 797; Patterson v. Allen, 50 Tex. 23.

[9, 10] The debts against a decedent constitute a lien upon all the property of the estate subject to the payment of debts. The lien may be, and should be, enforced by administration when it can be done; but, if it cannot be done, resort can be had to a suit to enforce the lien. Moore v. Moore, 89 Tex. 29, 33 S. W. 217. The lien in question exists upon the property itself, and is not a claim against the heirs of the estate. D. & A. Oppenheimer had a lien on all the estate of Thomas Coble inherited by Mrs. Eardley until their debt was satisfied; and, if the sale of one parcel of the property did not satisfy the debt, they could sell another, under their judgment, just as they could have done had there been personal service. If D. & A. Oppenheimer had a valid claim against the estate of Thomas Coble, as they undoubtedly had, they could have cited appellants by publication and have obtained a judgment for their debt, regardless of its being secured by an express lien, and the judgment, under proper pleading, would have bound all the property of Thomas Coble inherited by Mrs. Eardley subject to the payment of debts. This logically follows the ruling that a personal judgment can be rendered against resident heirs cited by publication in a sum not in excess of the estate inherited; and judgment should have been rendered against Mrs. Eardley, not only for her interest in the 15 acres of land, but also for her interest in the 10-acre tract, provided it was justified by the pleadings, as hereinafter indicated. While there have been no decisions directly on the question of personal judgments against unknown heirs, there have been decisions as to heirs known and personally cited, which by analogy, would control in regard to unknown heirs, and we will briefly review them.

In the case of Mayes v. Jones, 62 Tex. 365, opinion by Willie, Chief Justice, it was held, in regard to a suit against heirs: "The suit is in personam, and the heir may show in defense that he had received no assets by descent and prevent any recovery whatever against himself, or limit the recovery to the amount so received. The judgment, when recovered, is conclusive of the fact that the heir has received assets to the amount for which it was rendered; and an execution issues upon it as in case of any other judgment in personam." That decision was made under the present probate laws of this state which it is held do not differ in any material particular from the statutes under which the cases of State v. Lewellyn, 25 Tex. 799, and Webster v. Willis, 56 Tex. 468, were rendered, and which enunciate the same doctrine.

In the case of Kauffman v. Wooters, 79 Tex. 205, 13 S. W. 549, Mrs. Kauffman was the sole devisee and legatee of her husband, and the Supreme Court, through Chief Justice Stayton, held: "When Mrs. Kauffman received the estate of her husband, she made herself liable for debts of the estate to the extent of the assets subject to payment of debts received by her. To that extent she became a debtor, and the property in her hands liable to sale for payment, as it was in the hands of her husband." A personal judgment against Mrs. Kauffman was affirmed; it having been alleged that she had received property in excess of the debt from her husband.

Both of the decisions, immediately hereinbefore cited, have been questioned in the case of Blinn v. McDonald, 92 Tex. 604, 46 S. W. 787, 48 S. W. 571, 50 S. W. 931, in regard to their holding that the debts of a deceased person would not carry with them a lien on all his property except that exempted by law to his heirs. The original decision in Blinn v. McDonald seems to have been based somewhat on the absence of a section 88 from the statutes; but in the opinion on rehearing it was admitted that the section was not omitted from the statute, but the original opinion was adhered to. The only question in that case was whether a petition which did not specify and name the property that had come into the custody and possession of each heir was subject to demurrer. The decision was that it was so subject. While the writer doubts the soundness of the opinion, which is in the face of every decision in Texas on the subject, still it would not militate against the judgment in this case, which must be tested by the rules applicable to collateral attacks on judicial proceedings.

[11] There can be no doubt that if D. & A. Oppenheimer alleged in their petition that the unknown heirs of Thomas Coble had inherited two tracts of land from him, one of 15 acres, on which the plaintiffs had a vendor's lien, and 10 acres of land on which they had a statutory lien, and prayed that the vendor's lien be foreclosed on the 15

acres, and that it be sold, and that, if it did not sell for enough to cancel their debt, then that an execution be levied on the 10 acres for the balance, and proof had been introduced to sustain the allegations, the judgment and execution would be valid, even under the views enunciated in Blinn v. McDonald. If that proposition be sound, which it undoubtedly is, then in a collateral attack it will be presumed that those necessary matters were alleged and proved. Treat v. Maxwell, 82 Me. 76, 19 Atl. 98; Clayton v. Hurt, 88 Tex. 595, 32 S. W. 876; Martin v. Robinson, 67 Tex. 379, 3 S. W. 550; Endel v. Norris, 93 Tex. 540, 57 S. W. 25; Hardy v. Beaty, 84 Tex. 567, 19 S. W. 778, 31 Am. St. Rep. 80. Undoubtedly this action was not a direct, but a collateral, attack on the original judgment. Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325.

The statute (article 3235, R. Stats. 1911), which has been in effect since 1876, provides that, when a parent dies intestate, his estate vests immediately in his heirs at law; and all of such estate shall be liable and subject in the hands of the heirs to the payment of the debts of the deceased. In this case at least one-half of the two tracts of land vested in Mrs. Eardley, the sole heir of her father, Thomas Coble, upon his death; and, there being a debt outstanding against him in favor of D. & A. Oppenheimer, both tracts, independent of the vendor's lien, were liable and subject to that debt. When, they instituted their suit, the allegations of the petition necessarily disclosed the fact that the debt was one incurred by the deceased parent, and that the unknown heir, Mrs. Eardley, was liable for that debt to the extent of the property she had inherited from her father. The judgment and execution in the case against her obtained for D. & A. Oppenheimer nothing but what the law directs and justice demands; and, to the mind of the writer, theories as to what the pleadings in such a case should contain are of no practical use whatever. When a judgment is rendered against an heir for the debt of a deceased parent, the law fixes the liability of the heir, independent of what the judgment may recite; and any attempt to levy upon and sell the property of the heir, which was not obtained from the deceased parent, would be utterly null and void, and could not affect its title. Therefore the writer fails to see the force of any decision which may theorize as to what pleadings should contain so as to bind heirs for debts of a parent. Presumptions have been indulged in in this opinion as to what the pleadings contained in the original case, simply in deference to the opinion in Blinn v. McDonald,

and not that certain allegations in such pleadings were deemed important. The law required the pleadings to show that the claim related to the property of a deceased person, and the law, not the judgment, fixed the liability of the unknown heir.

[12] If, as contended by appellants, the entire proceedings in the suit of D. & A. Oppenheimer v. Unknown Heirs of Thomas Coble were null and void, the superior title to the 15 acres of land still remained in the plaintiffs, and appellants could never recover it without paying, or offering to pay, the purchase money. Northcraft v. Oliver, 74 Tex. 162, 11 S. W. 1121. As said in that case: "But if the property so purchased was, at the time of the purchase, charged or incumbered with the debt for which it was sold, then, independently of the legal proceedings under which it was sold, we think the rule that the purchase money must be restored before the property can be recovered back by its owner or his heirs does apply. The property of the deceased was in this case charged with the payment of his debts. This charge was superior to the claims of the heirs." The decision is broad enough to sustain the proposition that appellants could not recover a judgment for any of the land without paying off the whole of the indebtedness due by Thomas Coble.

[13] There is no merit in the claim that D. & A. Oppenheimer, having chosen a null and void method to enforce their claim, thereby lost their superior title to the land. There is no authority for such proposition. The doctrine of election can only apply when there are two or more methods of enforcing a claim; and if, as appellants say, the suit instituted was a nullity, the plaintiffs therein could not elect, because they had but one way to obtain relief, and that through an action for the land. That is clearly sustained by the decision in Gardener v. Griffith, 93 Tex. 355, 55 S. W. 314, cited by appellants, which holds that, if the right to foreclose is destroyed by a plea of limitations, the vendor may sue for the land.

Appellees, by virtue of their cross-assignments, request this court to render judgment in their favor for the five acres of land decreed by the trial court to Mrs. Eardley; but, as the court did not admit the execution nor the deed made thereunder in evidence, there is no basis for rendition in this court. Eidson v. Reeder, 101 Tex. 202, 105 S. W. 1113.

The judgment will be affirmed in every particular except as to the five acres out of the ten-acre tract adjudged to Mrs. Eardley, and as to that the judgment is reversed, and the cause remanded.