**KEDA DEVELOPMENT CORPORATION,**
Appellant,

v.

**Charlie L. STANGLIN, Appellee.**

No. 05–84–00052–CV.

Court of Appeals of Texas,
Dallas.

Oct. 31, 1986.

Timothy A. Duffy, Paul Kining, Harold J. Dollinger, Dallas, of counsel, for appellant.

Daniel J. Sheehan, Jr., Dallas, for appellee.

Before GUITTARD, C.J., and STEPHENS and DEVANY[1], JJ.

## UPON REMAND FROM THE SUPREME COURT OF TEXAS

DEVANY, Justice.

The judgment and opinion of this Court dated December 12, 1984, was heard by the Supreme Court of Texas on a writ of error from this Court. Our original opinion held that there was no evidence to support the judgment of the trial court setting aside the bulk sale of the three lots in question to satisfy an unpaid paving lien. The Supreme Court held that there is "some evidence that the bulk sale caused or contributed to cause the grossly inadequate consideration." The cause was remanded back to this court for further consideration of the other points of error. *Stanglin v. Keda Development Corp.*, 713 S.W.2d 94 (Tex.1986). Upon such consideration we reverse the judgment insofar as it denies recovery for insurance premiums and remand with instructions to require Stanglin to reimburse Keda for the amount of insurance premiums paid. Otherwise, the judgment is affirmed.

## THE FACTS

Charlie L. Stanglin, appellee, owned four parcels of land in Dallas, Texas. Sometime in 1969, the City of Dallas made assessments for paving Elam Road along three of Stanglin's parcels of land (referred to as parcels one, two and three). The fourth parcel was not affected since it does not face Elam Road. In 1974, upon Stanglin's failure to pay these assessments, the City obtained a judgment against Stanglin in the sum of $3,710.79 with interest at the rate of 5% from that date, together with paving-assessment liens on the three parcels facing Elam Road. At the trial of the present suit, there was considerable testimony about the three lots in question from several witnesses, including a surveyor and an appraiser. We summarize this testimony as to each lot.

Elam Road runs east and west, intersecting Buckner Boulevard, which runs north and south. Parcel one lies at the southwest corner of the intersection. To the west and lying next to it is parcel two. Further to the west and lying next to parcel two is parcel three. All three parcels face Elam Road, and the corner parcel, number one, also faces Buckner Boulevard. Parcel four is an inside lot lying south of parcels two and three, access to which is accomplished by passing over parcel number two.

The testimony reveals the following facts and market values as of February 3, 1981, the date of the sheriff's sale.

---

**1.** The Honorable Joseph A. Devany, Justice, was not a member of the original panel. Upon remand from the Supreme Court of Texas, Justice Devany was assigned to the panel to author the panel's opinion resulting from the mandate of the Supreme Court.

Parcel number three is covered mostly by a building housing a roller-skating rink, which leaves no room for parking. The market value of the underlying land was $131,300 and the depreciated value of the building, considering the lack of parking, was $237,000.

Parcel number two is paved with a driveway. It can accommodate about fourteen parked cars. Its market value was $22,900.

Parcel number one is a corner parcel covered with grass and trees. While it could be paved to accommodate thirty-three parked cars, it has no improvements. Posts are set around its perimeter to prevent cars from being driven upon it. Its market value was $31,000.

Parcel number four, which is not in issue, must nevertheless be described because it is an integral part of the roller-rink operations. It is paved and cars are driven through parcel number two to reach it. It is used to park about eighty cars. Furthermore, part of the roller-rink building actually extends onto parcel number four. Its value was $99,500.00.

On February 3, 1981, the sheriff sold in a *bulk sale* parcels one, two, and three for $5,282.69 to Keda Development Corporation, appellant. Stanglin filed suit to set aside that sale and tendered into court the amount paid by Keda. In a non-jury trial, the trial court found that the three parcels were advertised, bid on, and sold in bulk rather than separately; that the sheriff should have advertised the parcels, received bids, and sold each parcel separately; that parcel number one, which was not being used by Stanglin, had a market value alone in excess of the total judgment of $3,710.79. The court, on November 17, 1983, set the bulk sale aside and awarded to Keda the money on deposit with the court, representing its purchase price of $5,283.69. Keda was also awarded $10,000 in attorney's fees since it had to defend its title derived from the sheriff's sale.

Keda appealed to this court, assigning six points of error. Our original opinion addressed only Keda's second point of er-

ror, which complained that there was no evidence or insufficient evidence to support the trial court's findings that the bulk sale contributed to the inadequacy of the price. In that opinion Justice Stewart held that there was no evidence to support the trial court's findings and, therefore, reversed and rendered for Keda. Since the Supreme Court of Texas subsequently held that there is "some evidence that the bulk sale caused or contributed to cause grossly inadequate consideration," the Supreme Court has remanded the cause to this court to consider the factual sufficiency of the evidence and also the other five points of error, which we now consider. Because we disagree with all of Keda's points of error, except number five, we affirm the judgment of the trial court as provided below.

Under the circumstances of this case, we regard the Supreme Court's holding on the no-evidence point as controlling on the factual insufficiency point. Referring to evidence that the separate values of each of the lots in question greatly exceeded the amount of the judgment, that court held:

> It is reasonable to infer that any of the tracts, if sold separately or in combination with one other tract, would have satisfied the judgment. There is some evidence that the bulk sale caused or contributed to cause the grossly inadequate consideration.

*Stanglin*, 713 S.W.2d at 95.

■ If the Supreme Court's opinion means that the sufficiency of one or two tracts to satisfy the judgment is in itself evidence that the bulk sale contributed to the grossly inadequate price—regardless of whether the value of the remaining tract or tracts would have been reduced in value by more than the amount of the separate sale—then we must hold that the evidence is sufficient because, clearly, the evidence of separate values is also sufficient to support a finding that sale of one or two tracts would have satisfied the judgment. Moreover, there is also sufficient evidence to show that sale of parcel number one would not have reduced the value of the remaining lots because Stanglin had a sufficient

parking area for the skating rink on parcels two and four. Consequently, we hold that the evidence is factually sufficient to support the trial court's finding that the sale in bulk contributed to the gross inadequacy of the price.

In Keda's first point of error, it contends that Stanglin may not challenge the method by which the sale was conducted because TEX.REV.CIV.STAT.ANN. art. 1092 (Vernon 1963), when taken in connection with TEX.REV.CIV.STAT.ANN. art. 1059 (Vernon 1963), makes the sheriff's deed conclusive evidence of the regularity of the sale. Article 1092 provides two ways in which the holder of a paving assessment lien may enforce its lien. Article 1092 provides:

 The lien created against any property, or the

personal liability of the owner thereof, *may be enforced by suit or by sale of the property assessed in the same manner as may be provided by law for the sale of the property for ad valorem city taxes.* The recital in any deed made pursuant to such sale, that all legal prerequisites to said assessment and sale have been complied with, shall be prima facie evidence of the facts so recited and shall in all courts be accepted without further proof. (Emphasis added.)

This statute gives the city the option to enforce its judgment either by suit, judgment, and judicial sale by the sheriff under the law governing executions, or by extrajudicial sale by the city tax assessor and collector, as provided by TEX.REV.CIV. STAT.ANN. arts. 1058 and 1059. The City of Dallas opted to enforce its liens by filing suit and securing judgment, as authorized by article 1092. The ensuing judicial sale was subject to the rules governing execution sales, and the deed was issued by the Sheriff of Dallas County, who conducted the sale, rather than by the tax assessor and collector. Thus article 1059 does not apply. Keda's argument is without merit.

In its third point of error Keda argues that the trial court erred in applying article 3806 when one of the tracts is unimproved.

Article 3806, TEX.REV.CIV.STAT.ANN. (Vernon 1966) provides:

If real property situated in any town or city, taken in execution, consists of several lots, tracts or parcels, each shall be offered separately, *unless* the same be not susceptible of a separate sale by reason of the character of the improvements thereon. (Emphasis added.)

The evidence showed that parcels two and three had improvements, which were used in the roller-rink operation, but that parcel one was unimproved and was not used in that operation. In applying article 3806, parcels two and three might have been sold in bulk by reason of the necessity to use parcel two with parcel three, but parcel one had no improvements and thus was "susceptible of a separate sale." Under the uncontroverted evidence, parcel one by itself was capable of bringing an amount in excess of the amount of the judgment.

 In the light of this evidence, the trial court correctly interpreted article 3806 in a manner that furthers the underlying policy of the statute, which appears to be to secure the highest price at an execution sale. We overrule point of error number three.

Keda's fourth point states that the trial court erred in failing to hold that Stanglin may not challenge the sale of all of the property in accordance with the terms of the 1974 judgment, which was entered by agreement. We conclude that the judgment does not order a sale in bulk. That judgment forecloses the three separate liens, states that *"each,* be, and the same are hereby foreclosed, ..." (emphasis added), and orders the sheriff "to levy upon and to sell said properties according to law in satisfaction of this judgment." The order further directs that "if the proceeds of such *sales* be insufficient to make the amount of this judgment, then the officer executing such orders of sale shall make the remainder out of any other property belonging to the defendants subject to execution." (Emphasis added.)

The judgment, therefore, contemplates that there be more than one sale involving the properties and further that the sales be conducted according to law, which brings into operation the rules governing execution sales and article 3806. Although the judgment orders a sale of all of the property, it does not necessarily require that all of the property be sold if the judgment is satisfied by sale of only one or two of the lots. Keda cites *Gregg v. First National Bank*, 26 S.W.2d 179 (Tex. Comm'n App.1930, holding approved), to support its position that a judgment debtor may agree to a bulk sale. However, in *Gregg* the owner's written consent to a sale in bulk was given after judgment and in direct response to an inquiry whether the owner wanted properties to be sold separately or in bulk. *Gregg* at 182. No such consent is shown in the present case.

Keda further claims that Stanglin should be estopped from complaining of a bulk sale because several years had elapsed since the date of the judgment. We disagree since the right of Stanglin to contest the sale occurred after the sale was conducted when he became aware of the manner in which his properties were sold. He had no occasion to complain earlier because, as we have already pointed out, the judgment did not direct a sale in bulk. We overrule point of error number four.

Keda next complains in point of error number five that the trial court erred in refusing to order Stanglin to reimburse Keda for funds expended to insure the property subsequent to the sale. We agree and accordingly sustain Keda's fifth point.

At trial, it was stipulated that for the years 1981 and 1982, Keda spent a total of $11,760.00 for insurance on the three tracts of land. The trial court found that because Stanglin already maintained insurance on the premises, its purchase of insurance to protect *its* interest was wasteful. Further, the trial court found that Keda exercised poor business judgment by not negotiating with Stanglin in an attempt to persuade him to add an endorsement to Stanglin's policy providing coverage for whichever party might ultimately prevail in this litigation. We disagree.

After the sale, Keda was the record owner of the premises. It was certainly reasonable, if not mandated by sound business judgment, that Keda should obtain insurance to protect its interest in the property. Stanglin's interest was, at most, a contingent interest dependent entirely on the success of his efforts to void the deed. Certainly he was free to insure that contingent interest if he desired to do so; however, Stanglin's insurance would not also cover Keda's interest. It is a well settled rule of law that one can insure property only to the extent of one's interest in that property. *Hartford Fire Ins. Co. v. Evans*, 255 S.W. 487, 489 (Tex.Civ.App.—Amarillo 1923, no writ).

Each party had a separate and distinct property interest, and neither was required to insure the interest of the other. Even if it could somehow be arranged for Keda to be covered under Stanglin's policy, it would be unreasonable to expect Keda to rely on Stanglin to keep up the insurance premium payments. This expectation would be particularly unreasonable considering that the parties were on opposing sides in this litigation. It would be truly poor business judgment for Keda to trust an adverse party to insure Keda's own property interest. Thus, if Keda wished to protect its interest in its property against loss, procuring its own insurance was the only reasonable course of action. Penalizing Keda for acting in a commercially reasonable manner would be manifestly unfair.

It is widely held that upon setting aside an execution sale, all parties should be returned to status quo as far as is possible. *See House v. Robertson*, 89 Tex. 681, 36 S.W. 251, 253 (1896); *Mulling v. Jones*, 164 La. 894, 114 So. 725 (1927); *Northcraft v. Oliver*, 74 Tex. 162, 11 S.W. 1121 (1889). Although there is no controlling authority in Texas regarding the repayment of insurance premiums to a purchaser when a sheriff's sale has been voided, there is sub-

stantial authority concerning reimbursement for other expenses. The general rule in Texas is that when a sale is set aside, the purchaser is entitled to a return of the purchase money paid. *Elam v. Donald,* 58 Tex. 316 (1883); *Burns v. Ledbetter,* 56 Tex. 282 (1882). In *Mitchell v. Reitz,* 269 S.W. 279 (Tex.Civ.App.—El Paso 1924), *writ dism'd,* 281 S.W. 1044 (Tex.1926), the court held that a purchaser of lands under a void judgment foreclosing an attachment lien was entitled to reimbursement for his payment of delinquent taxes and for interest on the purchase price. It has also been held that a purchaser at an execution sale is entitled to recover the value of improvements placed on the property. *See Heidenheimer v. Loring,* 6 Tex.Civ.App. 560, 26 S.W. 99 (1894, no writ).

Other jurisdictions also hold generally that where a sale is set aside, the purchaser is entitled to reimbursement of the money paid by him. *Davis v. Hudson,* 195 Ky. 766, 244 S.W. 68 (1922). Specifically, the purchaser is entitled to repayment for the amount of the purchase price, *Hogg v. Budnick,* 227 Ky. 602, 13 S.W.2d 756 (1929); for interest on the purchase price, *State Bank v. Green,* 10 Neb. 130, 4 N.W. 942 (1880); and for taxes paid, *Zimmerman v. Boynton,* 59 N.D. 112, 229 N.W. 3 (1930).

Since reimbursement of insurance premiums is an issue of first impression in Texas, we have looked to other jurisdictions for guidance. In *Smith v. American Consumer Finance Corp.,* 21 B.R. 34 (Bankr. M.D.Fla.1982) (citation), the bankruptcy court held that when a sheriff's sale is set aside, the purchaser at the sale was entitled to be repaid the purchase price, with interest, together with payments on the mortgage and *homeowner's insurance premiums.* In *Cavenaugh v. Willson,* 24 Ky.Law Rep. 1507, 71 S.W. 870 (1903), the Kentucky court held that where a judgment under which real property was sold was subsequently reversed, the property was ordered to be reconveyed and the purchaser was entitled to reimbursement for amounts paid for *insurance,* ordinary repairs, taxes and interest. These two cases present sound reasoning and are per-

suasive authority to support Keda's argument that it should be reimbursed for the insurance premiums paid.

■ Finally, it is the policy of the law to sustain execution sales. *Burnam v. Blocker,* 247 S.W.2d 432 (Tex.Civ.App.— Fort Worth 1952, writ ref'd). Judicial policy does not urge courts to scrutinize sheriff's sales with an intent to defeat them. Quite the opposite is true. Every reasonable inference will be made in their favor to accomplish the goal of the sale. *Smith v. Crosby,* 86 Tex. 15, 23 S.W. 10, 13 (1893). Keda was guilty of no wrongdoing. It should not be penalized for relying on the regularity of a sale conducted by a public official. Stanglin, on the other hand, was the party in default. He had failed to pay the assessments due for street improvements which, presumably, increased the value of his property, and he let the judgment against him go unsatisfied for six years. After Keda has paid out its money in satisfaction of Stanglin's debt, simple justice requires that it be made whole for its reasonable expenses incurred in reliance on the sale, including insurance premiums. Denial of such recovery would tend to discourage bidding at judicial sales and thus would result in sales at lower prices which would be against the interests of judgment debtors as well as the public. Accordingly, we sustain Keda's fifth point of error.

Finally, Keda in point of error number six claims that the trial court erred in voiding the sheriff's deed in its entirety. Keda claims that the court did not have authority to void the sheriff's deed as to the transfer of the interest of Magelle Stanglin, the wife of appellee, since she was not a party to the lawsuit. Keda cites *Cooper v. Texas Gulf Industries, Inc.,* 513 S.W.2d 200 (Tex. 1974) as authority for its claim.

Keda's position is that the property is community property and is automatically joint-management property. Testimony was adduced that indicates the property in question was indeed community property. However, there is no evidence to indicate that it is joint-management property.

Section 5.22 of the Family Code, which Keda relies on, provides for a category of *sole*-management community property. TEX.FAM.CODE ANN. § 5.22(a) (Vernon 1975). The record shows that the three parcels of land in question here were deeded to Charlie L. Stanglin alone. Therefore, under § 5.24(a), there is a presumption that the property in question is subject to his sole management.

In *Cooper*, 513 S.W.2d at 202, the doctrine of virtual representation is discussed with respect to joint-management property. It is consistent with that analysis to hold that the husband's power of sole management gives him virtual representation of the wife in dealing with sole-management community property. We hold that Stanglin is entitled to bring suit and adjudicate the title to the property in its entirety. Keda's point of error number six is overruled.

In conclusion, we reverse the judgment insofar as it denies recovery for insurance premiums and remand the cause to the trial court with instructions to modify the judgment by requiring Stanglin, as a condition of setting aside the sheriff's sale, to reimburse Keda for the amount of the stipulated insurance premiums of $11,760, with interest from the dates of payment. Otherwise, the judgment is affirmed.

Affirmed in part and reversed and remanded in part.