## SPARKS et al. v. SUMMERS. (No. 3282.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 5, 1926. Rehearing Denied Dec. 23, 1926.)

1. **Appeal and error** ⬅️759—**Reviewing court need only inquire into sufficiency of pleadings to support judgment and jurisdiction, under briefs containing no assignments of error.**

Where briefs filed by plaintiffs in error contain no assignments of error, Court of Civil Appeals need only inquire into sufficiency of original pleadings to support judgment rendered and power of trial court to render any judgment against defendant.

2. **Attorney and client** ⬅️88—**Court had jurisdiction over defendants on attorney, selected by them, moving to quash serivce by publication.**

Where attorney appointed by court to represent defendants was subsequently selected by them and filed motion to quash service of publication, court acquired jurisdiction over defendants to enable it to render such judgment as pleading and evidence warranted.

3. **Appeal and error** ⬅️907(2)—**Reviewing court will assume fact necessary to support judgment, in absence of evidence to contrary.**

In suit on notes and to foreclose vendor's lien, Court of Appeals must assume, in support of judgment, that contract renewing notes set out in agreed statement of facts and in court's findings was sufficient to warrant conclusion that both lien and debt revived, in absence of evidence to contrary.

4. **Vendor and purchaser** ⬅️278—**Vendor's lien securing debt may be revived by renewal of debt alone.**

Renewal of debt alone may be sufficient to revive vendor's lien by which debt is secured, when there is nothing in renewal contract to indicate different intent.

5. **Appeal and error** ⬅️524—**Agreement, not part of statement of facts or exhibit, cannot be considered in passing on sufficiency of evidence to support conclusions.**

Copy of original renewal agreement of notes securing vendor's lien appearing as isolated document, not as part of statement of facts or exhibit to any pleading, cannot be considered as part of record in passing on sufficiency of evidence to support legal conclusions of court.

6. **Vendor and purchaser** ⬅️278—**Holder of vendor's lien notes, renewed by maker, held entitled to judgment for debt and foreclosure of lien.**

Holder of vendor's lien notes, renewed by maker so as to revive debt and lien, *held* entitled to judgment for debt and foreclosure of lien, in absence of any evidence that maker had no right to extend debt or that he was not cited or represented by attorney.

### On Motion for Rehearing.

7. **Appeal and error** ⬅️759—**Assignments of error, presented in some copies of briefs, will be considered, though omitted, through stenographic error, from all copies.**

Failure to incorporate assignments of error in all copies of briefs, due to error by stenographer, does not warrant refusal to consider assignments presented in some copies of briefs.

8. **Process** ⬅️96(4)—**Citation by publication on affidavit that residence is unknown brings citizen and resident of state within jurisdiction of court.**

Citizen and resident of state cited by publication issued on affidavit, stating that his residence was unknown was thereby brought within jurisdiction of court.

9. **Vendor and purchaser** ⬅️278—**Vendor's lien, securing debt, is revived by contract renewing debt, though not expressly mentioning lien (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5694, 5695).**

Under Rev. St. 1911, arts. 5694, 5695, as amended by Acts 1913, c. 123, §§ 2, 3 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5694, 5695), renewal of debt secured by vendor's lien, in absence of intention to waive or extend lien, is sufficient to revive lien, without expressly mentioning lien.

10. **Vendor and purchaser** ⬅️254(1)—**Equitable lien on land is implied as incident to debt for purchase money, which may be foreclosed as long as debt is enforceable.**

Where contract renewing debt revives obligation to pay purchase money of land, equitable lien on land is implied as incident to such debt which may be foreclosed as long as debt is enforceable.

Error from District Court, Cherokee County; C. A. Hodges, Judge.

Suit by Mrs. S. M. Summers, as community administratrix of the estate of herself and her deceased husband, against J. H. Sparks and another. Judgment for plaintiff, and defendants bring error. Reformed and affirmed.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

W. A. Wade, of Dallas, and A. B. Chandler, of Rusk, for plaintiffs in error.

W. T. Norman, of Rusk, for defendant in error.

HODGES, J. On October 28, 1924, Mrs. S. M. Summers, as the community administratrix of the estate of herself and her deceased husband, filed this suit in the district court against Isham Sparks and J. H. Sparks. The purpose of the suit was to recover the amount of two promissory notes executed by Isham Sparks and to forclose a vendor's lien on two tracts of land. It is alleged that in January, 1892, Isham Sparks purchased a tract of 29 acres of land from M. C. Waters, in part payment of which he gave four vendor's lien notes aggregating $385; that in the course of time the plaintiff, as community administratrix, acquired those notes; that on March 17, 1920, it was agreed between her and Isham Sparks that the balance due on that debt amounted to $500. A contract was then entered into by which the notes were renewed and the time of payment extended to January 1, 1921. The petition also declared on a note for $1,000, executed and delivered to her by Sparks in part payment of another tract of land. J. H. Sparks was made a party defendant, upon the ground that he was asserting some kind of interest in the land. The petition stated that Isham Sparks resided in Harris county, Tex., and J. H. Sparks resided in Kaufman county, Tex.

Citation was issued to the counties above named, but the writs were not signed by the clerk, and did not bear the seal of the court. The writ issued to Kaufman county was served upon J. H. Sparks, but no return was made on the one issued to Harris county.

On November 6, 1924, one of the attorneys for Mrs. Summers filed an affidavit stating that the plaintiff was mistaken in alleging the residences of the defendants, and that their residences were unknown. The parties to this appeal in their briefs apparently agree that citation by publication was made, but that is not definitely disclosed by the record.

A. B. Chandler, an attorney, was appointed to represent the defendants. On January 25, 1925, the next term of the district court, an answer was filed by Chandler, as attorney by appointment, for both defendants. In this answer he first moved that the citation by publication be quashed because the affidavit was false and defective. He also pleaded the nonjoinder of necessary parties, and that the action was barred by limitation.

The case was called for a trial before the court without a jury on June 25, 1925. It appears from the briefs, and inferentially from the record, that, while the evidence was heard on that day, the judgment was withheld, and not rendered and entered till September 5 thereafter. The judgment then entered gave the plaintiff the relief prayed for.

On July 22, 1925, J. H. Sparks filed a motion in which he alleged the failure to serve citation upon Isham Sparks, who resided in Harris county, and that the latter was then and had been for some time previous of unsound mind. He further alleged that the debts sued for were barred by limitation, and that the renewal pleaded by the plaintiff was invalid and ineffectual to revive and extend the debt or perpetuate the lien on the land. He concluded with a prayer asking "that the court do not render judgment herein; but, if the court does do so, then he adopts this plea as a motion for a new trial." That motion was signed and sworn to by J. H. Sparks. A reply to it was later filed by counsel for the plaintiff, which need not here be noticed.

On September 5, 1925, the court entered an order overruling the motion for a new trial, reciting that:

"After hearing said motion, and without further evidence being heard (the court) is of the opinion that the motion should be overruled. It is therefore ordered and adjudged that the same be and it is in all things overruled. To which action of the court the defendants objected and excepted, and the defendants, by and through their said attorney, Alton B. Chandler, as aforesaid, then and there in open court gave notice of appeal," etc.

At the request of Chandler, made later, the trial judge filed findings of fact and conclusions of law which are, in substance, as follows: (1) That the notes described in the plaintiff's petition were executed and renewed as alleged, that the indebtedness was secured by liens upon the land described, and that the plaintiff was entitled to recover the amount of the debt, together with interest and attorney's fees. (2) That the original petition was filed on the 28th of October, 1924, citation was issued returnable on the 8th day of December, 1924, by the sheriff of Kaufman county. That thereafter on the 11th day of November, 1924, both defendants, through A. B. Chandler, an attorney, filed a motion to quash the citations theretofore issued. (3) The court concluded: That, by reason of their motion to quash the citations at a former term of the court and their admission in the motion that they had both been personally cited, they were then in court and subject to its jurisdiction. (4) That the 29-acre tract described in plaintiff's petition was incumbered by a vendor's lien to secure the payment of plaintiff's debt, for which judgment was awarded; that Isham Sparks had not acquired title by limitation to the other land described in the plaintiff's petition; that Isham Sparks was not insane on the 17th day of March, 1920, nor at any time thereafter; and that defendant J. H. Sparks had no interest in the subject-matter of the litigation.

The court further concluded that, by the agreement entered into on the 17th day of

March, 1920, between Isham Sparks and the plaintiff, the original debt for $385 and the vendor's lien to secure it were revived, and the time of payment extended to January 1, 1921. He further concluded that the matters of fact set up in the defendants' motion for a new trial were not established by any evidence.

On November 21, 1925, J. H. Sparks and others, representing themselves as heirs of Isham Sparks and his deceased wife, filed a petition for a writ of error. They alleged that Isham Sparks died in August, 1925, and his wife died in 1922. They also alleged that, since the judgment was rendered, the plaintiff, Mrs. Summers, had died, and asked that citation be issued and served upon her heirs, whose names and residences are stated.

[1, 2] The brief filed by the plaintiffs in error contains a number of propositions, but no assignments of error. We therefore do not feel called upon to go further than to inquire into the sufficiency of the original pleadings to support the judgment rendered, and the power of the trial court to render any judgment against Isham Sparks. The court having found that A. B. Chandler, whom he had previously appointed to represent the defendants, afterwards became an attorney selected by them, and as such filed a motion to quash the service by publication, he had a right to conclude that the court had acquired jurisdiction of the persons of the defendants. By an appearance through an attorney of their own selection, they put themselves within the jurisdiction of the court and enabled it to render such judgment as the pleadings and the evidence warranted.

It is clear, from an inspection of the pleadings of the plaintiff below, that, if the facts alleged by her were true—and according to the court's findings they were—she was entitled to judgment for the amount of her debts and the foreclosure of the liens on all the land involved in this controversy. In the course of their argument, plaintiffs in error contend that the renewal contract executed by Isham Sparks was not sufficient to revive and extend the original vendor's lien on the 29 acres of land purchased by him from Waters. In the transcript is an agreed statement of facts which contains this recital:

"That, after the death of J. W. Summers, Mrs. S. M. Summers duly qualified as community administratrix of the estate of J. W. Summers, deceased, being his surviving widow, the said notes being community property of the said J. W. Summers and Mrs. S. M. Summers; that thereafter on the 17th day of March, 1920, by a duly acknowledged instrument in writing, Isham Sparks executed and acknowledged and delivered to Mrs. S. M. Summers, community administratrix, his certain extension agreement wherein he promised to pay to Mrs. S. M. Summers, community administratrix, $500 on the 1st day of January, 1921, being the amount due on said four original notes."

In his findings of fact, the trial court states:

"That thereafter, on or about the 17th day of March, 1920, by a duly acknowledged instrument in writing, defendant Isham Sparks, in consideration of said debt, executed and acknowledged and delivered to plaintiff his certain extension agreement wherein and whereby he promised to pay to plaintiff $500, the amount due on said notes, on the 1st day of January, 1921."

In his conclusion he adds:

"And the defendant Isham Sparks, on the 17th day of March, 1920, in manner and form to revive said debt and said vendor's lien, executed and acknowledged his extension agreement, wherein and whereby the existence of said debt to the extent of $500 and the existence of a vendor's lien on the said 29-acre tract to secure same."

[3-5] In the absence of evidence to the contrary, we must assume that the contract of renewal was sufficient to warrant the legal conclusion of the court that both the lien and the debt were revived and renewed. However, we do not mean to hold that a renewal of the debt alone would not be sufficient to revive the lien by which the debt was secured, when there is nothing in the renewal contract to indicate a different intent. See Ater v. Knight (Tex. Civ. App.) 218 S. W. 648. The transcript contains what counsel for plaintiffs in error call a copy of the original renewal agreement executed by Sparks, but that appears as an isolated document, not as a part of the statement of facts, or as an exhibit to any pleading. It cannot, therefore, be considered as a part of the record in passing upon the sufficiency of the evidence to support the legal conclusions reached by the court.

[6] So far as the record shows, there appears no error which justifies a reversal of the judgment rendered in this case. No evidence was offered tending to show that Isham Sparks did not have the right to extend the debt and lien against the land, nor was there any evidence offered that he was insane, or that he was not cited, or was not represented by an attorney of his own selection.

In that state of the record, and in the absence of any specific assignments of error, we conclude that the judgment of the trial court should be affirmed.

The CHIEF JUSTICE, being disqualified, did not sit in this case.

### On Motion for Rehearing.

HODGES, J. [7] In his motion for a rehearing, counsel for the plaintiffs in error complains of the statement made in the original opinion that his brief did not contain any assignments of error. He states what appears to be true, that four copies of his

brief were filed in this court, and one in the court below; two of the copies filed in this court contained the assignments of error, the other' two did not. The failure to incorporate the assignments in all of the copies, he says, was due to an error on the part of the stenographer. We are not disposed to treat that accidental omission as warranting a refusal to consider the assignments otherwise presented. The statement in the opinion was due to the fact that only those copies which did not contain the assignments happened to be the only ones examined in disposing of the appeal. But aside from an error in the amount of the judgment entered in the court below, the controlling questions raised by the assignments were considered.

There are, we think, but two grounds presented which call for a discussion. One is, Did the court acquire jurisdiction of the person of Isham Sparks? The other, Did the evidence justify the trial court in concluding that the lien expressed in the notes given for the purchase money of the 29-acre tract was revived and renewed by the extension agreement?

[8] The court filed findings of fact at the instance of counsel then presenting the parties defendant, and in those findings it 'is stated that both defendants appeared by counsel of their own selection. How the court reached that conclusion does not appear. It may be that it was based upon observations of what occurred in his presence during the progress of the trial. However, upon further examination, we find that the record shows that Isham Sparks was cited by publication issued upon an affidavit stating that his residence was unknown. It is conceded that Isham Sparks was at the time a resident of the county of Harris in this state. Being then a citizen and resident of this state, he was brought within the jurisdiction of the court by citation by publication. Knowles v. Logansport G. & C. Co., 19 Wall. 59, 22 L. Ed. 70; O'Neill v. Brown, 61 Tex. 34; Traylor v. Lide (Tex. Sup.) 7 S. W. 58; Fernandez v. Casey, 77 Tex. 452, 14 S. W. 149; Northcraft v. Oliver, 74 Tex. 162, 11 S. W. 1121; Treadway v. Eastburn, 57 Tex. 209; 2 Black on Judgments, § 907.

The next question is, Was the court authorized by the evidence to conclude that the lien above referred to was revived and extended? The following is the material portion of the agreed facts bearing upon that issue:

"That thereafter on the 17th day of March, 1920, by a duly acknowledged instrument in writing, Isham Sparks executed and acknowledged and delivered to Mrs. S. M. Summers, community administratrix, his certain extension agreement wherein he promised to pay to Mrs. S. M. Summers, community administratrix, $500 on the 1st day of January, 1921, being the amount due on the said four original notes."

[9] It is contended that this indicated that the debt only, and not the lien, was extended by that agreement. The argument is that, under the statute, the extension contract must expressly include the lien, or the lien is not revived or extended. Article 5694, Revised Statutes of 1911, as amended by Acts 1913, c. 123, § 2 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5694), provides that notes evidencing a vendor's lien shall be barred both as to the debt and lien, if suit is not filed for enforcement with four years after maturity. That provision of the statute added nothing new to the former laws of limitation. Long prior to its passage, the courts had uniformly held that a mere vendor's lien, as distinguished from the vendor's superior legal title, expired by limitation with the debt which it secured. That ruling was based upon the proposition that the lien was an incident to the debt and continued only so long as the debt existed. Article 5694 provides that such debts and liens may be extended in the manner pointed out in the next succeeding article. The material provisions of the next article (as amended by Acts 1913, c. 123, § 3 [Vernon's Sayles' Ann. Civ. St. 1914, art. 5695]) are as follows:

"When the date of maturity of either debt referred to in either of the foregoing articles is extended, if the contract of extension is signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance by the party or parties obligated to pay such indebtedness as extended and filed for record in the county clerk's office in the county in which the land is situated, the lien shall continue and be in force until four years after maturity of the notes as provided in such extension, the same as in the original contract and the lien shall so continue for any succeeding or additional extension so made and recorded."

Apparently all that is required to revive or extend the lien is a contract reviving or extending the debt. That was done in this case, as is shown in the statement quoted. Our conclusion is that the renewal of the debt, in the absence of something indicating an intention to waive or extend the lien, is sufficient, without an express mention of the lien to also revive the lien. That construction is, we think, supported by the ruling of the Commission of Appeals in Bellamy v. Oklahoma Farm Mortgage Co., 278 S. W. 180, and cases there cited.

[10] The record in this case shows that the debt which formed the subject of the renewal contract was for the purchase money of the 29 acres of land in controversy. As stated in the case cited above, this did not cease to be a debt for purchase money because its collection through judicial proceedings was barred by the lapse of time. The moral obligation to pay the debt continued. Sparks had a right to renew the debt, with all of its legal incidents and characteristics, at any time he saw proper. The

statute places no limit of time on the making of such a contract. There is another reason why this lien followed the debt as an incident. If the renewal contract revived and perpetuated an obligation for the purchase money of the land, the law would imply an equitable lien upon the land as an incident to that character of debt which might be foreclosed, as long as the debt was enforceable through judicial proceedings. Ransom v. Brown, 63 Tex. 188; Wilcox v. Bank, 93 Tex. 322, 55 S. W. 317; Clark v. Collins, 76 Tex. 33, 13 S. W. 44.

It is conceded that the judgment rendered in the court below on the renewal contract is excessive in amount. It was for the sum of $750. It should have been for $657.50.

The motion for a rehearing will therefore be granted in part, and the judgment will be reformed as to that amount. In all other respects the motion is overruled.