**SPINNLER et al. v. ARMSTRONG.**

No. 2882.

Court of Civil Appeals of Texas. El Paso.

Oct. 12, 1933.

Rehearing Denied Nov. 2, 1933.

Kemp & Nagle, of El Paso, and Raymond E. Buck, of Fort Worth, for appellants.

Fryer & Cunningham, of El Paso, for appellee.

HIGGINS, Justice.

On July 5, 1932, appellee filed this suit in the district court of El Paso county against Gustave E. and Annie Laurie Spinnler, who were alleged to be residents of said county. In his petition plaintiff alleged that during the month of February, 1932, and just prior to and thereafter, at the special instance and request of defendants, he represented said defendants in a certain suit that at that time was pending in the Sixty-Fifth judicial district court of El Paso county, Tex., styled Annie Laurie Spinnler v. Gustave E. Spinnler, numbered 36,985 on the docket of said court; that he represented the said Annie Laurie Spinnler as attorney, at the special instance and request of said Annie Laurie Spinnler and Gustave E. Spinnler; and that under and by virtue of the laws of the state of Texas, and the express contract and agreement on the part of said defendant, Gustave E. Spinnler agreed to pay appellee a reasonable attorney's fee for services in said cause, both as to said suit and as to property division between said defendants. Appellee further alleged that he represented said defendants, as agreed to and contemplated by them, and performed his contract of employment, and that a reasonable attorney's fee for representing said defendants in said suit and property settlement, and all matters pertaining to the same, was the sum of $5,000.

On September 16, 1932, citation for Gustave E. Spinnler was issued to Hudspeth county returnable to the November term beginning November 7th. This citation was served October 26th.

On October 6th plaintiff filed affidavit setting up that the residence of the defendants was unknown, and upon the same day citation was issued for service by publication returnable to the November term. The last publication upon this citation was October 28th.

November 7th Gustave E. Spinnler filed plea of privilege in statutory form, claiming his right to be sued in Hudspeth county.

On the same date Hon. M. Nagle, as amicus curiæ, filed suggestion to the court that the citation by publication was null and void, and did not constitute any valid service upon Annie Laurie Spinnler.

November 12th plaintiff filed affidavit controverting Gustave E. Spinnler's plea.

November 29th plaintiff filed amended controverting affidavit to Gustave Spinnler's plea. In this amendment, as fixing the venue in El Paso county, plaintiff alleged that he, as an attorney at law, filed this suit against defendants for the reasonable value of legal services performed for them at the special instance and request of Annie Laurie Spinnler; that said services were performed in connection with suit for divorce by the said Annie Laurie Spinnler against Gustave E. Spinnler and for property settlement, and which said services were necessary to defendants; that Annie Laurie Spinnler was a resident of El Paso county, Tex., at the time of the filing of the suit, and that the residence of Gustave E. Spinnler was in El Paso county, Tex., at the time of the filing of said suit; and that if Gustave E. Spinnler had a residence in Hudspeth county, Tex., that each of such places constituted his residence. And, without waiving the foregoing allegations but insisting upon the same, appellee further alleged that, during the month of October, 1932, during the pendency of this suit he heard that the defendants were in the act of moving their residence to some other county or state; and that he was unable to ascertain the place to which defendants were intending to move and, therefore, issued citation by publication.

Hearing upon the plea was continued to the next term without prejudice.

December 21, 1932, Mrs. Spinnler was served by the sheriff of Bexar county, Tex., with an original citation issued December 13, 1932.

January 5th interlocutory judgment by default was rendered against Mrs. Spinnler.

January 20, 1933, Mrs. Spinnler filed plea of privilege, in statutory form, to be sued in Bexar county.

January 20th Mrs. Spinnler filed her answer, subject to the action of the court on her plea of privilege, and without waiving same.

February 6th Mrs. Spinnler filed a verified motion to set aside the interlocutory default judgment, and for hearing on her plea of privilege; such motion reciting that it was filed without waiving her plea of privilege, and alleging as grounds for setting aside said judgment, first, that she was not a resident of El Paso county, Tex., on the date of filing the petition, or at any date subsequent thereto, and that her plea of privilege had been filed in good faith, and that this court did not have venue over her person; then setting up grounds for excusing her delay in filing her plea of privilege; then alleging the facts to show a meritorious defense, and praying to have default judgment set aside, and for hearing on her plea of privilege.

February 15th appellee filed reply to the motion of Mrs. Spinnler.

February 15th appellee filed controverting affidavit to the motion of Mrs. Spinnler to set aside the default judgment.

February 17, 1933, the court entered judgment setting aside the interlocutory judgment of default rendered against Mrs. Spinnler. And on the 21st day of February the order setting aside the interlocutory judgment by default was amended so as to allow appellee three days in which to file his controverting affidavit to the plea of privilege of Mrs. Spinnler.

February 21st appellee filed his controverting affidavit to the plea of privilege of Mrs. Spinnler, alleging that this was a suit against defendants jointly for reasonable value of legal services performed for them at the request of Annie Laurie Spinnler in connection with suit for divorce by said Annie Laurie Spinnler against Gustave E. Spinnler and for property settlement; that said services were necessary to defendants; that plaintiff was suing both defendants under an implied contract in which they became liable to him for a reasonable attorney's fee of $5,000; that on July 5, 1932, and thereafter until August 15, 1932, Annie Laurie Spinnler was a resident of El Paso county, Tex., and had been for a long time prior thereto, and at the time of the filing of said suit she had not acquired any other residence or domicile to change her residence or domicile from El Paso county, Tex.; that when she left El Paso county, Tex., she proceeded to Aransas Pass, Tex., and there sojourned until August 15, 1932, when she went to San Antonio, Tex. Further alleging that interlocutory default judgment was rendered against Annie Laurie Spinnler on January 5, 1933; that her plea of privilege was not filed until January 20, 1933; that she filed her motion to set aside said judgment theretofore rendered, which motion was granted on February 17, 1933; and quoting from Annie Laurie Spinnler's motion to set aside the default judgment: "That as far as she was concerned that she would as leave have the cause of action tried in this Honorable Court as in any other forum and that her plea of venue was raised by Gustave E. Spinnler for his interest and benefit." Further alleging that her plea of privilege was filed too late, and that she had abandoned and waived the same.

On February 21st the defendants' pleas of privilege were overruled, from which they appeal.

Upon request of defendants the court filed findings and conclusions. The findings of fact are to the effect: (1) That Gustave E. Spinnler is now, and at all times since the date of the filing of the suit and for more than twelve months prior thereto was, a resident of Hudspeth county, Tex.; (2) that the residence of Annie Laurie Spinnler was, up until April, 1932, and for two years prior thereto, in El Paso county, Tex.; (3) that in April, 1932, she left El Paso with the intention of establishing her home and residence in San Antonio, Bexar county, Tex.; (4) that she did not establish such residence in San Antonio, or anywhere else, until August 15, 1932, when she did establish her home and residence in San Antonio; (5) that in the interim between the time she left El Paso and the time she established her home and residence at San Antonio, she sojourned at Aransas Pass; (6) that appellee did not know the actual residence of either defendant at the time of filing of the suit, but that he was of the opinion and supposed that the residence of Gustave E. Spinnler was in Hudspeth county, Tex., and that the residence of Annie Laurie Spinnler was in El Paso county, Tex.; and (7) that at the time of the filing of the plea of privilege on behalf of Annie Laurie Spinnler neither Annie Laurie Spinnler, nor her attorneys, had any actual notice of the default judgment.

As conclusions of law the court held: (1) That the legal residence, for the purposes of this suit, of Annie Laurie Spinnler was, at the time of the institution of the suit and now, in El Paso county, Tex.; (2) that inasmuch as plaintiff's allegations charge a joint liability of appellants to him, and the residence and venue of one of the appellants, Annie Laurie Spinnler, is El Paso, Tex., that the venue of the suit as to both appellants properly lies in El Paso county, Tex., and that the plea of privilege filed by Gustave E. Spinnler should be overruled; and (3) that the plea of privilege on behalf of Mrs. Annie Laurie Spinnler came too late to avail her of the benefits of same.

The court's findings and conclusions disclose that Gustave E. Spinnler's plea was overruled upon the theory that the venue as to him was properly laid in El Paso county because his codefendant, Mrs. Spinnler, lived in that county and the allegations of the petition charge a joint liability of the defendants to plaintiff.

Assuming, for the purpose of determining the correctness of the ruling upon Spinnler's plea, that Mrs. Spinnler was a resident of El Paso county, such residence and the allegations showing a joint liability of the defendants is insufficient to sustain the venue in El Paso county as against Gustave Spinnler, who resided in Hudspeth county. In such cases the well-established rule is that a joint liability must not only be alleged but evidence adduced showing, prima facie, a joint liability. Yantis v. Gilliam (Tex. Civ. App.) 62 S.W.(2d) 173; Thomason v. Sparkman (Tex. Civ. App.) 55 S.W.(2d) 871; Oakland Motor Car Co. v. Jones (Tex. Civ. App.) 29 S.W.(2d) 861; Duffy v. Cole Petroleum Co., 117 Tex. 387, 5 S.W.(2d) 495; World Co. v. Bow, 116 Tex. 146, 287 S. W. 241.

There is no finding by the court that any joint liability on the part of defendants was shown by the evidence, and an examination of the evidence adduced upon the hearing discloses that no proof to that effect was offered. In fact, the evidence fails to show a cause of action of any nature, joint or several, against either of the defendants. The plea of Gustave Spinnler should have been sustained (see Rev. St. 1925, art. 1995, subd. 4).

Passing now to the merits of Mrs. Spinnler's plea, it is apparent the same was overruled upon two theories, viz.:

1. That her legal residence for the purpose of the suit at the time of its filing and at the hearing was in El Paso county.

2. That her plea came too late.

The facts concerning Mrs. Spinnler's residence are as follows:

She testified that she was divorced from Gustave E. Spinnler on July 8, 1931; that she left El Paso permanently and returned to San Antonio in April, 1932, and that she has not been in El Paso since, except that she was here from August 15th to August 22d on a visit; that she left El Paso because she had obtained a divorce from Mr. Spinnler, and El Paso had never been her home except during her marriage to him, and that she desired and then intended to return to San Antonio to make it her permanent residence; that she arrived in San Antonio on April 17, 1932. Her purpose was to make that place her home because she had lived there before and it agreed with her and suited her better than any other city. When she arrived at San Antonio, she found the home she had formerly occupied was taken, and as the weather was warm she took the children to Aransas Pass, leaving them with her mother, and then returned to San Antonio in a few days and looked for a suitable house; that when she left El Paso on the 17th day of April, 1932, she took all of her luggage, wearing apparel, and personal effects with her to San Antonio, leaving nothing in El Paso except some household furniture which was temporarily let out, with the house; that she did not take the household furnishings with her because they were temporarily let out to some friends, and also she did not know whether she would need them in San Antonio; that she stayed a few days in San Antonio when she first arrived there, then, after tak-

ing her mother and children to Aransas Pass to get them out of the heat, returned in a few days to San Antonio; she returned to San Antonio about the first of May, for the purpose of obtaining a permanent residence; that she has two children who were attending schools in El Paso when she left on April 17, 1932, and when she left on April 17, 1932, she took her children out of school, but school was not yet out; that when she left El Paso in April, 1932, she then had the fixed intention of removing permanently from El Paso to San Antonio, Tex.; that when she went to the Texas gulf coast she simply went there for a summer vacation to escape the heat at San Antonio; that she has owned no property in El Paso, except the furniture, since June, 1931; that her intention was to establish her permanent home at San Antonio when she left El Paso on April 17, 1932; that she had never had any other intention since that date, and has considered San Antonio as her home since that date; that her intention was to abandon her residence in El Paso when she left there on April 17, 1932; that her permanent home was in El Paso until February 17, 1931, when she moved to San Antonio, Tex.; that she remained in San Antonio until September, 1931, when she returned temporarily to El Paso and remained until April 17, 1932, at which time she finally and permanently abandoned El Paso as her home and established her home in San Antonio; that when she returned to El Paso in the fall of 1931, she went to Mr. Spinner's house at 4200 Hastings street, her interest in which had been previously deeded to him; she did not know how long she would remain in El Paso, but she knew she would not remain there permanently; that she had been advised by numerous doctors to leave El Paso because of the dry climate; that her permanent residence and address upon arriving at San Antonio in the spring of 1932 was 115 Courtland street, which was her address in San Antonio until she found a suitable house on the 1st of August; that she did not remain only temporarily in San Antonio on a visit in the spring of 1932, when she arrived there, but she did leave in a short time for Aransas Pass, but established San Antonio as her home when she left El Paso on April 17, 1932, and it has been her home since then; that she was not living in Aransas Pass, but merely visiting at a summer resort; that she was living in San Antonio, Tex.; that during the months of June and July, 1932, she had all of her effects, wearing apparel, valuables, papers, and in fact everything in San Antonio, Tex., except some household furniture that she had left temporarily in El Paso, Tex.

"Cross Int. No. 22: Is it not a fact that you had no house address in San Antonio until August, 1932? Ans.: No." (Cross Int. No. 22.)

"Cross Int. No. 23: During May, June, July and August, 1932, is it not a fact that all of your household effects were in your home in El Paso, Texas, the same as they had been for several years previous to said months? Ans.: No, it is not a fact that during May, June, July and August, 1932, all of my household effects were in my home in El Paso, Texas, the same as they had been for several years previous. I did not have any home in El Paso during that time, as it had been previously deeded to Mr. Spinner, and all of my effects except the furniture were with me in San Antonio." (Cross Int. No. 23.)

"Cross Int. No. 26: When you left El Paso, Texas, in April, 1932, did you intend to maintain a home in San Antonio, Texas, while you were in Aransas Pass? Ans.: Yes, that was my intention."

Mr. Spinner testified that Mrs. Spinner told him, at or just prior to the time she left for San Antonio, that she was going away from El Paso for good, and would never come back, and wanted to make her home at San Antonio, where she had lived the year before.

The foregoing statement of the testimony is taken from appellants' brief. The accuracy of the statement is not challenged by appellee, but, in support of the finding as to Mrs. Spinner's residence, appellee in his brief submits this further statement: "Mrs. Spinner testified that she did not rent any place in San Antonio, Texas, during the period from the time she left El Paso, in April, 1932, up until the month of August, 1932, but that during that time she temporarily rented a house in Aransas Pass, Texas, for the summer and that she came back for the last time to El Paso on August 15, 1932, and remained here for a week, which she spent in packing and shipping her furniture that she had concluded not to sell. She further testified that she married G. E. Spinner on May 23, 1923, and was divorced from him on July 8, 1931, and that up until the 17th of April, 1932, she lived at 4200 Hastings street, in the City of El Paso, Texas, and that during her residence there and during her married life she and Mr. Spinner were accustomed to go away for the summer to various places, and that on February 17, 1931, and before her divorce from Mr. Spinner she went to San Antonio, Texas, where she stayed until September, 1931, when she returned to El Paso and lived in the same house in El Paso County, Texas, at 4200 Hastings street in the City of El Paso. The evidence further shows she is only claiming her privilege for the benefit and at the suggestion of another person, to-wit, Mr. Spinner."

The testimony shows conclusively that in April, 1932, Mrs. Spinner left El Paso with her children with the intention of perma-

nently abandoning El Paso as her home and making her home in San Antonio, and that she carried her intention into effect.

The fact that when she went to San Antonio in April, 1932, she did not remain there, but went to the coast for the summer, is immaterial. It did not alter the fact that in fact and in intent she had permanently left El Paso county and become a nonresident of that county.

In Amberson v. Anderson (Tex. Civ. App.) 43 S.W.(2d) 120, 122, Justice Smith said: "The privilege of the citizen to be sued in the county of his domicile is a fundamental and valuable right, of which he may not be lightly deprived, and the exceptions thereto must be strictly construed and clearly established to be effectual."

Other opinions might be cited in which the same thought is expressed.

The testimony upon the issue of Mrs. Spinnler's residence is insufficient to support the finding made, and the attack made upon such finding is sustained. Faires v. Young, 69 Tex. 482, 6 S. W. 800; Auld v. Dowdy (Tex. Civ. App.) 268 S. W. 1047; Huff v. Duffield (Tex. Civ. App.) 251 S. W. 298; Ryan v. Johnson (Tex. Civ. App.) 284 S. W. 652.

Nor can the view be sustained that Mrs. Spinnler's plea came too late.

It may be conceded that such a plea comes too late in the case of a defendant who has been duly served but fails to file a plea of privilege on or before appearance day and suffers a default judgment to be rendered against him, and thereafter moves to set aside such judgment and file a plea of privilege. United Chemical Co. v. Leathers (Tex. Civ. App.) 285 S. W. 918.

In such a case the defendant rests under the obligation of answering, and upon his failure so to do the court was authorized to render the default judgment.

But if the service is insufficient to support a judgment by default, the defendant need not answer and he cannot be penalized for failing to do so.

The default judgment against Mrs. Spinnler was based upon service of the citation to Bexar county. The petition alleged that her residence was in El Paso county and an affidavit had been later filed stating her residence was unknown as a basis for constructive service. The record does not show any citation ever issued to El Paso county for Mrs. Spinnler. The record fails to show by what authority the clerk issued the citation to Bexar county.

Under such circumstances the judgment by default based upon service of that citation was unauthorized.

See Massie Drilling Co. v. Nees (Tex. Com. App.) 266 S. W. 504, where it was said: "Before judgment can be taken against any defendant by default, the record must affirmatively appear that all of the necessary requisites have been complied with and that the defendant against whom such judgment by default is taken is properly before the court. The record fails to show by what authority the clerk of the district court of Wichita county issued citation for the Massie Drilling Company to Archer county, and we think that the clerk was without authority to issue such citation, and that a judgment by default cannot be based thereon against plaintiff in error as a joint-stock association. Tyler v. Blanton et al., 34 Tex. Civ. App. 393, 78 S. W. 564; Friend v. Thomas et al. (Tex. Civ. App.) 187 S. W. 986."

See, also, Walden v. Locke (Tex. Civ. App.) 33 S.W.(2d) 475.

It was necessary for Mrs. Spinnler to have the default judgment set aside, and when this was done her plea of privilege should have been considered upon its merits. Wolf v. Sakm, 55 Tex. Civ. App. 564, 120 S. W. 1114, 121 S. W. 561; Turner v. Ephraim (Tex. Civ. App.) 28 S.W.(2d) 608.

In this connection appellee makes the point that the court had jurisdiction over the person of Mrs. Spinnler so as to authorize the default judgment by virtue of the service by publication of the citation above referred to. Mrs. Spinnler is a citizen and resident of Texas and as to such persons service of citation by publication in a proper case confers upon the court jurisdiction to render a personal judgment. Fernandez v. Casey, 77 Tex. 452, 14 S. W. 149; Sparks v. Summers (Tex. Civ. App.) 289 S. W. 714.

The citation by publication in this case we think was fatally defective, but aside from that it is apparent the default judgment was manifestly not based upon that service, because no attorney was appointed to defend the suit for Mrs. Spinnler as the law requires in such cases. Article 2158, R. S.

Nor is there any merit in the point that the amicus curiæ suggestion of a defect in the citation by publication constituted an appearance by Mrs. Spinnler and waiver of her privilege. Atchison, T. & S. F. R. Co. v. Stevens, 109 Tex. 262, 206 S. W. 921; Elliott v. Standard, etc., Co. (Tex. Civ. App.) 173 S. W. 616; International & G. N. Railway Co. v. Moore (Tex. Civ. App.) 32 S. W. 379.

For the reasons stated the pleas of privilege were improperly overruled.

Appellee presents two cross-assignments of error, which have been considered and are overruled.

The rulings of the court referred to in such cross-assignments were manifestly correct and call for no discussion.

The order overruling the pleas is reversed, and the cause is remanded to the court below, with the instruction to transfer the cause to the district court of Hudspeth county or Bexar county, as the plaintiff may elect. Atchison, T. & S. F. R. Co. v. Stevens, 109 Tex. 262, 206 S. W. 921.

Reversed and remanded, with instructions.